UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALEXANDER DUBOSE JEFFERSON<br>& TOWNSEND LLP,<br><br>Plaintiff,<br><br>v.<br><br>SUSAN VANCE,<br><br>Defendant. | § § § § § § § § § § § § § | 1:17-CV-133-RP |

## ORDER

Before the Court in the above-entitled matter is Plaintiff's Motion to Compel Arbitration and to Stay or Dismiss, (Dkt. 24), Defendant's Motion to Permit Discovery, (Dkt. 30), and the responsive filings thereto. Having considered the filings, relevant law, and the entire case file, the Court issues the following Order.

### I. BACKGROUND

Plaintiff Alexander Dubose Jefferson & Townsend LLP ("Plaintiff" or "ADJT") is a law firm specializing in appellate representation. (Compl., Dkt. 1, ¶ 7). Defendant Susan Vance ("Defendant" or "Ms. Vance") was a non-equity partner at ADJT until her employment was terminated on November 16, 2016. (*Id.* ¶ 1). On February 22, 2017, ADJT filed suit against Ms. Vance pursuant to the Computer Fraud and Abuse Act, the Texas Uniform Trade Secrets Act, and the Texas Theft Liability Act. (*Id.* ¶¶ 17–30). On March 15, 2017, Ms. Vance filed an Original Answer and Counterclaims, advancing claims for conversion, negligence, breach of contract, and violations of the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. (Answer, Dkt. 13, ¶¶ 95–120).

1

ADJT filed the instant motion, which seeks to compel all claims in this matter to arbitration and to stay or dismiss this proceeding, on April 19, 2017. (Mot. Compel, Dkt. 24). On May 3, 2017, Ms. Vance filed a Response and Request for Pre-Arbitration Discovery, contending—among other things—that ADJT "has failed to show the existence of a valid arbitration agreement." (Vance Resp. Mot. Compel, Dkt. 27, at 1). She subsequently filed a Motion to Permit Discovery, seeking a court order permitting her to conduct "limited pre-arbitration discovery" regarding (1) whether the arbitration provision in question is procedurally unconscionable, is substantively unconscionable, was fraudulently obtained, or rests on an illusory promise; and (2) whether ADJT has waived its right to arbitrate. (Mot. Permit Discovery, Dkt. 30).

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA" or "the Act") permits an aggrieved party to file a motion to compel arbitration when an opposing party has "failed, neglected, or refused to comply with an arbitration agreement." 9 U.S.C. § 4; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The Act represents a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (stating that the FAA "expresses a strong national policy favoring arbitration of disputes").

A court's consideration of a motion to compel arbitration pursuant to the FAA is subject to a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–258 (5th Cir. 1996). The Court must first determine whether the parties agreed to arbitrate the dispute. *Id.* at 258 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). That determination involves two questions: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Graves v. BP Am., Inc.*, 568

2

F.3d 221, 222 (5th Cir. 2009); *Webb*, 89 F.3d at 258. The Court must then determine whether any legal constraints foreclose arbitration of those claims. *Mitsubishi Motors*, 473 U.S. at 628; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006).

Texas contract law governs the inquiry into whether there is a valid agreement to arbitrate between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). According to state law, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer establishes that the employee received notice of its arbitration policy and accepted it." *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)). "If the employee receives notice and continues working with the knowledge of the modified employment terms, the employee accepts them as a matter of law." *Id.*

### III. DISCUSSION

The arbitration provision at issue in this case, which the parties refer to as the ADJT Dispute Resolution Program ("the Dispute Resolution Program"), states that it "govern[s] all disputes that may arise between employees and ADJT." (Dispute Resolution Program, Dkt. 24-1, at 5). The Dispute Resolution Program also states that "[a]ll legal disputes directly or indirectly arising out of or relating to the employment relationship . . . not otherwise resolved through negotiation or mediation, shall be submitted by ADJT or by the employee for final, binding arbitration . . . ." (*Id.*).

To evaluate the parties' respective arguments regarding the enforceability of the Dispute Resolution Program, the Court must first consider whether there is a valid agreement to arbitrate between the parties. *See Graves*, 568 F.3d at 222; *Webb*, 89 F.3d at 258. Central to that inquiry is whether ADJT has established that Ms. Vance received notice of the arbitration policy and accepted its terms. *See In re Dillard*, 198 S.W.3d at 780 (Tex. 2006) (citing *In re Halliburton*, 80 S.W.3d at 568).

3

Actual notice can be express or implied. *Doe v. Columbia N. Hills Hosp. Subsidiary, L.P.*, No. 02-16-275-CV, 2017 WL 1089694, at *4 (Tex. App.—Fort Worth Mar. 23, 2017) (no pet. h.). The Court will thus first consider whether ADJT has established that Ms. Vance received express notice; if necessary, it will then turn to whether Ms. Vance received implied notice.

*A. Express Notice*

Here, employees were first informed of the Dispute Resolution Program in an October 13, 2016 email. (Email to Employees, Dkt. 24-1, at 3). That email, entitled "Firm Policies," explained that "management [was] in the process of organizing, updating, and supplementing the firm's employee and practice policies." (*Id.*). After giving instructions on how to access the "Employee Handbook" folder on the firm's computer system, the email listed a series of existing policies included in the folder. (*Id.*). It then noted that a "new policy," the "ADJT Dispute Resolution Program," was available in the Employee Handbook folder and would take effect on November 12, 2016. (*Id.*). The email did not include any substantive information regarding the Dispute Resolution Program; indeed, it did not even use the word "arbitration." (*Id.*). As a result, Ms. Vance contends that no valid agreement to arbitrate exists. (Vance Resp. Mot. Compel, Dkt. 27, at 2–3). ADJT disagrees, arguing both that it provided Ms. Vance with sufficient notice and that she had a duty to make further inquiry after receiving the October 13, 2016 email. (ADJT Reply Mot. Compel, Dkt. 31, at 2–3).

Texas courts have suggested that an employer's online posting of a policy is insufficient notice. *See, e.g.*, *HSS Sys., L.L.C. v. Lucan*, No. 03-10-761-CV, 2011 WL 2297716 (Tex. App.—Austin June 9, 2011, no pet.) (noting the absence of "any authority suggesting that the mere presence of a policy on the company intranet, without any further notification to an employee, amounted to notice of the policy"). Generally, cases involving intranet postings of policy changes

4

"have found unequivocal notification only when there are other indications of direct notice to the individual (usually a mailing or distribution directly to the plaintiff) that supplemented the [i]ntranet posting." *Okocha v. Hosp. Corp. of Am.*, No. 3:10-CV-1763, 2011 WL 4944577, at *7 (N.D. Tex. Oct. 18, 2011).

Here, ADJT has not established that it provided direct notice of the arbitration agreement to Ms. Vance. While the firm informed employees, including Ms. Vance, of a "dispute resolution program" via email and provided instructions on how to access the policy, it did not attach the policy to the email or otherwise directly inform Ms. Vance of the policy's substance. *Cf. Robertson v. U–Haul Co.*, No. 3:10-CV-2058, 2011 WL 444773, at *1, *4 (N.D. Tex. Feb. 7, 2011) (noting that a copy of the arbitration policy in question was posted on the company's intranet, but basing the decision to grant a motion to compel arbitration on the fact that the plaintiff personally received a copy of policy); *Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687, 689 (S.D. Tex. 2003) (noting that a dispute resolution plan was available on the company's intranet, but also that a human resources manager met and discussed the plan with the plaintiff and that the employer sent the plan to each employee at her home address); *Jones v. Fujitsu Network Commc'ns, Inc.*, 81 F. Supp. 2d 688, 692 (N.D. Tex. 1999) (noting that an employer distributed to every employee, including the plaintiff, an information packet containing the arbitration agreement in question, and held training classes that the plaintiff attended, before mentioning that the employer also posted the agreement on the company intranet).

The distinction between attaching a policy to an email, on the one hand, and informing an employee of the policy's existence and online availability, on the other, may seem trivial. This Court, however, must apply Texas law, and at least one Texas court has deemed an analogous distinction dispositive. That court found that an employer provided insufficient notice of its arbitration policy

5

despite the fact that (1) the employer posted the policy on the company intranet site; (2) the employer informed the employee in question about the intranet site; (3) the employee acknowledged that she could access the employer's policies on the intranet site; (4) the employer instructed the employee that she was responsible for reviewing and familiarizing herself with the policies; and (5) the employee acknowledged that she had received "orientation" on "Problem solving/Grievance Procedures." *Columbia,* 2017 WL 1089694, at *5.

### B. Implied Notice

Whether ADJT provided sufficient notice to Ms. Vance therefore depends on whether notice may be implied because Ms. Vance had a duty to make further inquiry. "A duty to make further inquiry 'extends only to those matters that are fairly suggested by the facts really known.'" *Columbia*, 2017 WL 1089694, at *4 (quoting *Exxon Corp. v. Raetzer*, 533 S.W. 2d 842, 847 (Tex. App.—Corpus Christi Jan. 30, 1976, writ ref'd n.r.e.)). "Notice will not be implied when the circumstances may refer equally to some matter other than that with which a person is purportedly charged with having notice." *Id.* (citing *Exxon*, 533 S.W. 2d at 847).

ADJT's email informing employees about the upcoming implementation of a "dispute resolution program" and providing information on how to electronically access a copy of that policy fairly suggested that (1) ADJT's policies were in electronic format and available for review; and (2) ADJT was implementing a dispute resolution program that would become effective on November 12, 2016. It did not, however, fairly suggest to employees that the firm was implementing a mandatory, binding arbitration policy.[1] *See Columbia*, 2017 WL 1089694, at *5 (finding, despite an

---

[1] The Court notes the Declaration of Wallace B. Jefferson, which states: "In the days and weeks following the October 13, 2016 email . . . numerous, general discussions about the arbitration policy [took place] among firm personnel in the Austin office of ADJT." (Jefferson Decl., Dkt. 31-1). Because the Declaration does not suggest that Ms. Vance herself participated in or was aware of these conversations, it does not impact the Court's analysis.

6

employee's written acknowledgment that she had been "oriented to" materials including "Problem solving/Grievance Procedures," that "[the employer's] informing [the employee] about the intranet site and [the employee's] acknowledging that she could access [the employer's] 'policies' fairly suggested that [the employer's] 'policies' (but not specifically the Arbitration Policy) were in electronic format and available for review by employees but not that [the employer] had a binding arbitration policy").

The circumstances of this case are directly analogous to those in *Columbia*. There, the employee acknowledged in writing that she was aware of a policy governing "Problem solving/Grievance Procedures." *Id.* at *5. Here, Ms. Vance received an email noting that a new "Dispute Resolution Program" would take effect the following month. Applying the *Columbia* court's reasoning to the facts of this case, the Court reaches a similar conclusion. ADJT's email to Ms. Vance did not fairly suggest that the firm was implementing a binding arbitration policy and that her continued employment would constitute her acquiescence to that policy. She cannot, therefore, be held to have had a duty to further investigate the terms of that policy.

The Court therefore concludes that ADJT has failed to establish that Ms. Vance received sufficient notice—whether express or implied— to create a valid agreement to arbitrate. Plaintiff's Motion to Compel Arbitration must therefore be denied.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Compel Arbitration and to Stay or Dismiss, (Dkt. 24), is hereby **DENIED**. Defendant's Motion to Permit Discovery, (Dkt. 30), is therefore **DISMISSED AS MOOT**.

The Court previously ordered that this matter would be stayed pending the determination of the arbitrability of the claims in this lawsuit. (Dkt. 22). Because the instant Order finds that there is

7

not a valid arbitration agreement between the parties, **IT IS HEREBY ORDERED** that the stay in this matter is **LIFTED**. In accordance with the Local Rules, the parties are **ORDERED** to file a joint proposed scheduling order on or before May 26, 2017. *See* W.D. Tex. Local R. CV-16(c).

**SIGNED** on May 22, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE